is the court. I'm Rebecca Kurz. I'm arguing on behalf of my client, Michael Green, this morning. There are two reasons why the inventory search in this case was not valid. The first is that the police officer who conducted the inventory did not follow the Grandview tow policy. Second, in my opinion, it really was not an inventory search. That was a pretext. It was actually a search for evidence of a crime. Why is it a violation of a tow policy of a constitutional level infringement? Well, on a constitutional level, and what you'll see... Or at least having the result of requiring some kind of exclusion of the evidence. Well, there's two ways of moving a disabled vehicle under this policy. There's one in which the police will take it into custody and then they can do their The vehicle is disabled to constitute an obstruction to traffic and the person in charge of the vehicle is unable to provide for its removal. And at 1.3.3 is also involved, right? Illegally parked. You could also say it was illegally parked, but if you'll notice on both of these sections, they both fall under the category of abandoned vehicles. He did not abandon his vehicle. He was present. If you go over to section 2.1... Ms. Kirsch, does that depend on what time you measure it? I know you say, well, he's there. It's not abandoned. But is it kind of abandoned when you don't have a driver's license and you don't have this and you think the car is stolen? Isn't it constructively abandoned? It's just what I was going to say. It's a terrible, terrible argument. It sounds like a constructed theory. Okay, go ahead. And in this case, actually, you know, he's there the whole time. They actually start the inventory while he's still there. They write him his two traffic citations. And then at that point, he leaves. So even under a constructive abandonment theory, I don't think he'd get there because he's still there. The other thing in this case is that he's repeatedly asking the officer, I just need the name of the tow service. I will arrange for the tow myself. And he's allowed to do that under section 2.1. Well, I'm not sure about that. Because if you look at 2.3, which is what you rely on, it says, yes, he or she may consult with the owner to obtain a towing firm of their choice, assuming that there is a reference back to the owner. This is not a very well written policy. If time constraints allow, and it may well be because your client's car was blocking traffic and unlike having it there overnight, now you're starting to get traffic. It's the morning. He might have said, look, time constraints don't allow you. You had 11 hours to remove your vehicle. You simply did not do it. Now we're in quasi rush hour. This is a busy thoroughfare. I'm not going to give you another two or three hours to remove your vehicle. Well, one thing I'll disagree is that it wasn't parked at that spot for 11 hours. OK. You have to listen to the dash cam video to figure that out. Because he tells the and there's actually some officers there who can vouch for me. Then I got a jump and then I came over here. But we don't know how long he was parked on this particular street. It had been a while, though, right? Well, you know, they get a call in for a suspicious person. It's a fact, right, that he's asleep when they get there? Yeah, go ahead. And so I think it's not clear from the record, but they kind of make it sound like maybe two, maybe three hours. Yeah, go ahead. Now, back to your question, sir. I'm looking at section 2.1, and that says a citizen doesn't have to be the owner. Citizen requesting assistance in removing their disabled vehicle may request any licensed tow service located within the city, and the department will assist them in making contact. Well, we'll try to. You left out the try to, but go ahead. We'll try to. Yeah, we'll try to contact them. If you talk about what your question was, did time allow for this? Right, and I think you have to go there under your argument, because you argue that the labels or headings matter, that the first heading matters because it says abandoned, and then you've got to look at the heading here, disabled vehicle, and everyone agrees that your client's car was disabled at the time. So if headings apply here, you've got to go to 2.31 and 2.32 as well. Well, but 2.1 specifically has the term disabled vehicle in it. Oh, for sure, but it has to be modified by 2.3 as well. Well, one other point, though, that I would make is that the officer under a non-custody tow, I think this is 2.2, if the citizen does not have a particular tow service they want to use, the officer can call the city's contractual tow service, which in this case was laser tow. So there's a difference between laser tow coming, picking up the car, and taking it to an impound lot, where the police may then do an inventory search, versus laser tow being contacted on behalf of the citizen, the occupant of the vehicle, to tow it to their private lot, where an inventory search will not be done. Under either of those two scenarios, you've got the same time frame. Counsel, does it matter that your client wasn't the owner? I don't think so. Under the tow policy, it says, you know, just a citizen. Now, later on, your client was the owner. In 2.3, under the disabled vehicles, it says that the owner could obtain a tow of their choice. He's not the owner. He's not. And he's not licensed to drive it, so he can't. Well, and I'm not suggesting he be allowed to drive away. Well, it's not going to go anywhere. Apparently, it's not even capable. Well, either way, the car has to be towed. But I don't think it makes a difference that he's not the owner. Well, it does use the word owner in 2.3.1. It does use the term owner. It doesn't go back. And then it goes on, sorry, and it says 2.32, if this is not satisfactory. So let's say you're not the owner. This isn't satisfactory. They contact the city's contract tow. Remember, though, that everything in this section is under the heading of a non-custody tow. The officers are not taking custody of the property. They're not taking custody of the vehicle. I agree with that. But to get to their inventory search, they got to do a custody tow. And you got to the if this is not satisfactory, which is what I was going to ask you about. The owner point takes you if this is not satisfactory. If we don't have an owner, maybe you don't, you know, they can take it, you know, they can, the officer can call on his own. But if you go to the non-custody versus custody tow, and that's the page of the operations manual, it says the difference is non-custody tow is the vehicle's request is towed at the request of the citizen, whereas a custody tow is when it's disabled on a public street, et cetera, et cetera. So I don't, I just don't know how far that gets you, your argument. I'm going to go back to your first question and say this is not a well-written policy. I agree. There's a lot of typos and grammatical mistakes. Another thing, too, to maybe point out that if you go through the entire policy, even the sections that don't apply in this case, Grandview really does go bend over backwards to let people take their own car away. Even if you're under arrest, you can make alternative arrangements. So even though constitutionally the law doesn't say that you have to be, you provided lesser intrusive means of taking care of the vehicle, Grandview is very generous here. Now, another thing, I think that this is a problem. If we're going to compare custody to non-custody, I'm going to go ahead and use up my rebuttal time. If you're comparing custody and non-custody, you're giving the officer too much discretion, and that's what happened here. What about, would you address 3.1 of the policy? 3.1. The vehicle inventory, that if an officer directs the tow, then it's going to be inventory. And this is a situation where that happened. Well, he directed it, but he didn't afford Mr. Green the opportunity to do it under 2.1. Why would he have been required to do that if Green didn't own the car? He seems to have had discretion in that regard if Green didn't own the car. I'm going to go back to 2.1 where it says a citizen. It clearly contemplates that the driver or the occupant doesn't state that it has to be the owner. Owner shows up later. I do agree with you in that. It shows up later in Section 2, but not under the section we're saying matters. And here's what's going on. The officer thinks that this car is stolen. He doesn't have probable cause. He can't arrest on that fact, but he admits it throughout that dash cam video. I've got reasonable suspicion. You're not doing anything to make my reasonable suspicion go away. So in choosing, specifically choosing, I'm going to do this custody policy. Even though the policy provides for a non-custody, he is exercising his discretion in a way that allows arbitrariness. If I break down in Grandview and I'm not doing anything suspicious, I get to choose my company. I get to do it myself. If I'm doing suspicious and there's not probable cause, the officer can then shift to a custody tow under 1.32. And as a pretext, then get into the car to search for evidence. That's where I think the problem is with the way this tow policy specifically operates. Officers have a choice and it allows them to do something that's clearly unconstitutional. And if you listen to that dash cam video, I put all of the times on the video timestamp of where the officer says something that he is investigating a crime, anything that indicates that. Thank you very much. Mr. Green. May it please the court. My name is D. Michael Green. I represent the United States in this matter. And it's the United States' position that Officer Andrew Bolin was acting squarely within Grandview City tow policy in this situation and was performing his community caretaking function to remove a vehicle that was a traffic obstacle on a public roadway in the morning. Evidence in the record that there were vehicles actually having to swerve out of the way of where the defendant's vehicle as well as the police car were located. This was clearly a situation where it was a disabled vehicle and it was an illegally parked vehicle. In fact, Officer Bolin actually cited Mr. Green, gave him two traffic citations. Now, if you do 1.3.2, it has the word and in the middle of it. The first part of it, you have stressed vehicles disabled. And then it says, and the person in charge, doesn't even say owner here, is unable to provide for its removal. And we would, we, it's our position Mr. Green was completely unable to, was unable to provide for its removal because this car had been broken down there for several hours. Now, you know, the defense says, well, this 11 hours came from a statement on the video from the defendant. I do urge the court to listen to the police video here of the colloquy between Mr. Green and Officer Bolin. It is a kaleidoscope for Mr. Green of ever shifting stories of him refusing to provide the most basic information about this car. Who owns this car? You know, where did this car come from? The officer determined very quickly that the plates on the car went to a 1988 Oldsmobile. It didn't come back to a 1996 Saturn. The officer had the VIN number, called in the VIN number. But you don't claim the stolen, the plates stolen or wrong plates. You don't claim that as a justification, right? That's a separate from 1.3. I think, I think that goes to the... But you didn't claim it in the district court, right? No, but well... Okay, go ahead. That's part of what, the panoply of what renders Mr. Green unable to basically take charge of this car as far as arranging for a tow. And you didn't claim emergency circumstances? No, we did not claim that, but it is definitely claimed traffic obstruction. Yeah, but you didn't claim that in the district court, right? Yes, we did. So you claimed 1.3.2, which is the sample and 1.3.3, which is the obstruction. Right. And those are the only two you claimed in the district court? Yes. Okay. That's what we were claiming. We believe that this fit within a custody tow situation, although this court has raised excellent issues about even if you go to the non-custody. If you read the definition of that, it's the citizen requesting assistance. And that certainly wasn't Mr. Green. In fact, Mr. Green was the opposite. He was pushing the officer away. But the point here is that Mr. Green... At this point, Officer Boland would have been irresponsible, in a sense, to have let Mr. Green to go ahead and arrange a tow on a car where he can't determine who it's registered to, who the owner is. That in the policy, the factors you're giving us now, which sound good. It's kind of like jury arguments, you know, in jury cases. But is that anywhere in this policy? Well, not what I just said. What's the closest thing in the policy to what you said? Because don't we have to look at the policy? And the Supreme Court said that's important. That is important. The person in charge of the vehicle is unable to provide for its removal. I think that that fits when you have... With a car, but there's every reason to doubt the validity of that person's legitimate link to the car. I think that under the tow policy... And also, as the courts have held in this, it's not a mechanical application. It's substantial compliance. I think it's whether you have a situation where an officer is clearly inventing a reason to tow a car so he can get into it. And I know those have come before the court. Well, that's not the situation here. You have an officer who has to tow the car. In fact, the defense conceded in her argument that the car had to be towed. She said that in the first part of her argument. So there's no dispute. The car was disabled. The car had to be towed. Now, at this point... Counsel, before you move on, I just wonder whether we're really in 2.1, 2.3. Because I wonder... I know you say he was being obstinate and he wasn't answering the questions. And I agree with you. But opposing counsel is also right that once the police stopped by, he was like, I really just need a tow company. You know, I really just want you to help me with that. And so you could construe that as requesting assistance in finding a tow company. I mean, he clearly was not happy about the police being there. But at least you could construe it as bringing into the non-custody tow. Now, he may still lose. But I wonder if that's the correct provision. Well, I'm not saying that that's what the court said. You could. There's an argument made to construe it that way. But in the facts of this, Mr. Green even indicates he was going to call a tow company. But then when the officer presses him about, well, who did you call? He goes back to, my phone's dead. He won't give him a name. You know, if you think of the goal of getting this car removed. And all throughout, Officer Bullen is talking about he wants to get this car removed. If the goal of getting the car removed is advancing the football down the field, the football's been on the 25-yard line for several hours now. It hasn't moved a yard up the field. It's just sitting there. Are we ahead or behind? Excuse me. Well, that's why I think Mr. Green's behind. Because he just can't articulate anything reasonable to this officer about what he's going to do to get rid of this car. To get this car off the street. At one point, he says he has friends coming to help him. When the officer asks him, okay, well, who are these friends? Mr. Green goes into this tirade of, do I have to give you the names of all the people who I want to have help me? And Officer Bullen's like, well, you know, you don't have to give me any names. But I'm trying to help you sort this situation out. We're trying to sort this situation out. And his complete stonewall, basically, his complete stonewall leads to the situation, including not advancing the ball of getting a tow truck there. While this is going on, you have cars who have to, there's one point where you can see a school bus as they kind of go by. It's creating a traffic obstruction. It's a public safety hazard. And yes, I think we can agree that I think this is very common. Unfortunately, the tow policies in municipalities, they could be worded better. But the issue is whether or not substantial compliance, whether Officer Bullen's actions were sufficiently fettered to a standardized police procedure. And here, I think, on all the facts, on the evidence of the encounter on the video and the testimony, he was sufficiently fettered. He wasn't just deciding, I'm going to tow this vehicle. Had this vehicle been parked up in a driveway in a public place where the owner of the house was saying, I'm fine with the car there, well, then, you know, we're not even standing here because, you know, that would have been an issue. But that's totally not the issue here. This actually is a classic case of a police officer performing community caretaking in order to help ensure the public safety of getting this car off the street. This car that had the hood up, had the trunk up. Was the door open? The doors were closed, but the hood was up. The trunk was up. I thought there was a door open at some point. Well, not when Officer Bullen first came up on the car. Oh, okay. Yeah, when he saw the hood was up, the trunk was up, and there were tools strewn about this car. Which, again, goes back to the fact, whether it was 11 hours, it would have been there for several hours. The defendant was asleep. And again, it just comes back to the fact that Officer Bullen needed to get this car removed. And so the United States believes that he was acting squarely within the tow policy, squarely within his community caretaking functions. And if there are no further questions, I'll conclude my argument. We would ask that the court affirm. Thank you. Mr. Green, I see no further questions. Ms. Kurz? Not of time, but I would like to point to three specific places in the record. The officer testified that the VIN number came back and it didn't show it registered to anybody. That's incorrect. At 92855 on the video, the dispatcher says it comes back to a 1996 Saturn. No records, no wants. And this car is not a Saturn, right? No, it is a Saturn. Oh, it is? Okay, go ahead. The tags are to an Oldsmobile. Okay, great. Thank you. The officer asked Mr. Green, who does the car belong to? He says, Catherine Gooch, 93240. So he does to say who the owner is. There are six different places between 939 and 1006 in which he asked to be allowed to call a tow service. And at the very end of it, he says, I just needed the number of a place to call. He's got a dead alternator or a dead battery. It makes sense that he can't get Wi-Fi on his phone and look a place up on his own. At page 50 of the suppression hearing transcript, the officer admits that there was in the glove box a vehicle inspection and application for title and the title itself. He didn't check that the entire time that he's dealing with Mr. Green. He doesn't even bother to get into the glove box, even though Mr. Green says the title's in there. Go look at it. Thank you. Thank you, Ms. Kurz. Thank you also, Mr. Green. We'll take the case under advisement.